IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION,<br><br>Plaintiff,<br><br>vs.<br><br>GELITA, USA, INC.,<br><br>Defendant. | CASE NO.: 05-CV-4029<br><br>ORDER |

This matter is before the Court on Plaintiff's motion for summary judgment (Docket No. 9) and Defendant's cross motion for summary judgment (Docket No. 12). The Court held a hearing on the motions for summary judgment and issues the following ruling.

**INTRODUCTION**

Frank Verdorn ("Verdorn") was a member of the United Food and Commercial Workers International Union, Local 1142 ("Union") located in Sioux City, Iowa. On November 11, 1998, he was hired from the union hall by Gelita, USA, Inc., ("Company"), an industrial gelatin production company with facilities in Sioux City, Iowa. On September 21, 2003, Verdorn accepted a supervisory position with the Company. Verdorn continued in a supervisory role until May 5, 2004, at

which time he was discharged due to alleged unsatisfactory performance.

During all relevant times, a collective bargaining agreement ("CBA") was in effect between the Union and the Company. Article IX, Section 1 of the CBA, entitled "Grievance Procedure", sets forth the process of handling disputes between the parties, including the prerequisite step of filing a grievance within a certain amount of time. Step 3 of the Grievance Procedure provision contains an arbitration clause. It states in pertinent part:

> In the event such dispute is with reference to the proper interpretation or application of this contract and upon the request of either party, such dispute shall be submitted to an arbitrator chosen by the parties.

After Verdorn's discharge and under the terms of the CBA, on or about May 5, 2004, the Union filed a grievance with the Company on Verdorn's behalf alleging CBA violations relating to his discharge. Specifically, the Union alleged that the Company's action in discharging Verdorn violated Article VIII, Section 7 and possibly Article XIV, Section 5 of the CBA. Article VIII, Section 7 of the Agreement states as follows:

> Employees who after having attained seniority status, leave the bargaining unit but remain employees of the Company shall

2

> retain seniority accumulated at the time
> they leave the bargaining unit for 18
> months; but they shall not accumulate
> additional seniority during said 18 months
> period while employed by the company
> outside the bargaining unit.

Article XIV, Section 5 states that the Company must suspend a non-probationary employee and investigate a case prior to discharging him.

The Company denied the Union's grievance, finding that it was neither subject to the grievance procedure or arbitrable because Verdorn was not a member of the bargaining unit at the time of his discharge. The Company relied on Article I, Section 1 of the CBA, which states:

> The Company recognizes the Union as the
> sole collective bargaining agency for the
> purpose of collective bargaining in respect
> to rates of pay, wages, hours of employment
> and other conditions of employment for all
> production and maintenance employees of the
> employer at its Sioux City, Iowa operation;
> excluding laboratory employees, office
> clerical employees, salesmen, professional
> employees, guards and supervisors as
> defined by the Labor-Management Relations
> Act of 1947 as amended.[1]

---

[1] Under the Labor-Management Relations Act,

"The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C. § 152(11). The parties do not

3

Specifically, the Company alleged that Verdorn was a supervisor and, thus, excluded under Article I, Section 1. After its grievance and request for arbitration were denied, the Union asked this Court to compel arbitration of these matters.

The parties agree that a valid CBA exists between them. They also agree that the arbitration provision is valid. The parties disagree as to whether the terms and conditions of the CBA, specifically the arbitration provision, apply to a supervisory employee such as Verdorn. The Union claims that the CBA's provisions apply to Verdorn and as such the Union is entitled to arbitrate its grievance. The Company claims that supervisory employees are excluded from the protection of the CBA and therefore, it is not required to arbitrate the grievance.

**STANDARD FOR SUMMARY JUDGMENT**

Fed. R. Civ. P. 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Greer v. Shoop, 141 F.3d 824, 826 (8th Cir.

---

dispute that Mr. Verdorn was a supervisor under this Act or under the CBA.

4

1998). Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of material fact is genuine if it has a real basis in the record. <u>Quick v. Donaldson Co.</u>, 90 F.3d 1371 (8th Cir. 1996). As to whether a factual dispute is "material," the United States Supreme Court has explained that only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. <u>Quick</u>, 90 F.3d at 1374.

**DISCUSSION**

The issue this Court must decide is whether the parties intended to exclude supervisors from the CBA arbitration provision. If the Court finds, with positive assurance, that the answer is in the affirmative, then the Company should not be compelled to arbitrate the grievance. If the Court cannot

5

find, with positive assurance, that the CBA excludes supervisors from the benefits of arbitration, then the arbitration provision will be found valid and enforceable.

"Whether a collective bargaining agreement requires the parties to arbitrate a particular grievance is 'undeniably an issue for judicial determination.'" IBEW v. GKN Aero. N. Am., Inc., 431 F.3d 624, 627 (8th Cir. 2005) *citing* AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649 (1986). However, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." Id. Thus, the Court's review of this case is limited to deciding whether the parties agreed to arbitrate a particular issue.

AT & T sets forth four principles the Court must consider when deciding whether the parties agreed to arbitrate. First, the parties must agree in contract to submit to arbitration. Because "arbitration is a matter of contract," parties "cannot be required to submit to arbitration any dispute which [they] have not agreed to submit." Id. at 648.

6

Second, whether a matter is subject to arbitration is an issue for judicial determination.

> The question of arbitrability-whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance-is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.

Id. at 649.

This second principle is based in contract. The determination of what a contract says is a decision left to the courts.

> The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty.

Id. at 649.

Third, the court does not rule on the underlying controversy, but rather determines if the matter is subject to arbitration. "In deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." Id.

Fourth, if the court finds a valid arbitration clause, then a presumption is created that the issue should be

7

arbitrated.  This is especially true in labor disputes.

> Arbitration is a matter of contract, and no party may be required to submit a dispute to arbitration if it has not agreed to do so.  In the labor context, however, the Supreme Court has determined that Congress's chosen policy is best effectuated by a presumption in favor of arbitration. (Citations omitted.)  Thus, when the dispute involves a labor issue, "an order to arbitrate . . . *should not be denied unless it may be said **with positive assurance** that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute*."

IBEW v. GKN Aero. N. Am., Inc., 431 F.3d 624, 627 (8th Cir. 2005) *citing* United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960) (emphasis supplied).  *See also* AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 650 (1986).

The parties agree that a valid arbitration clause was in effect between them at all relevant times.  They do not agree on the application of the clause, or the CBA as a whole, to the Union's grievance.  The Company argues that Article I, Section 1 of the CBA excludes non-bargaining unit supervisors like Verdorn.  Specifically, it argues Verdorn is not entitled to arbitration because he was not a member of the bargaining unit at the time of his discharge.  However, Article VIII, Section 7 only applies to non-bargaining unit members.  Under its terms, Article VIII, Section 7 applies to "employees who after having attained seniority status, *leave the bargaining*

8

*unit* but remain employees of the Company..." (Emphasis supplied.) Thus, to accept the Company's interpretation of the CBA would render Article VIII, Section 7 meaningless.

The Court is persuaded that the language of Article VIII, Section 7 was put in place to provide newly departed bargaining unit members an 18-month period of time, a window, if you will, within which to return to the bargaining unit and maintain their seniority status. During this 18-month period, a non-bargaining unit employee could return to the bargaining unit not having forfeited his rights under the CBA. That is exactly what happened in this case. Verdorn was discharged within that 18-month window and, as such, should be entitled to the benefits of the CBA during this period of time.

Justice Brennan's concurrence in <u>AT & T</u> explains that when a standard arbitration clause exists in a collective bargaining agreement, the Court must find explicit language in the CBA excluding arbitration for the matter at issue in order to find that arbitration is not mandated. <u>AT & T</u> at 654-655. Neither the CBA arbitration provision nor any other provision contain language specifically excluding supervisors from arbitration.

9

The Company also argues that the Union waived its right to argue the enforceability of the arbitration clause because it did not raise those issues in its grievance. This argument is without merit. The Union filed an original action with this Court to determine whether the CBA provides for arbitration of this matter. "Whether a collective bargaining agreement requires the parties to arbitrate a particular grievance is 'undeniably an issue for judicial determination.'" IBEW v. GKN Aero. N. Am., Inc., 431 F.3d 624, 627 (8th Cir. 2005) *citing* AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649 (1986).[2] This is a different issue from determining the merits of the case. Even if the Court was so inclined to determine the merits of the Union's grievance, it cannot do so because "a court is not to rule on the potential merits of the underlying claims." Id. Therefore, the Union properly filed its original action with

---

[2] IBEW v. GKN Aero. N. Am., Inc., 431 F.3d 624 (8th Cir. 2005), was discussed at some length at the hearing on these matters. Although the IBEW case addressed issues similar to those in this case, the Eighth Circuit's decision boiled down to the specific collective bargaining agreement language in that case. At hearing, both parties agreed that the contract language in IBEW is different and distinguishable from the CBA language in the case at bar. *See* Hearing Tr. at pp. 38-44. The Court agrees and finds that because the language in the respective collective bargaining agreements is dissimilar, IBEW is not controlling.

10

this Court to determine whether the parties agreed to arbitrate the issues.

In this case, the Court cannot find such positive assurance that the parties meant to exclude Verdorn's grievance from arbitration. The CBA does not provide such clear intent of the parties so as to overcome the presumption of arbitrability set forth in AT & T and its progeny. Any doubt as to whether a grievance should be arbitrated should be resolved in favor of coverage. Id. at 650.

As heretofore set out in this ruling, this Court presumes it is appropriate now to sum up the matter as the Court sees it. The Company contends Mr. Verdorn, as a supervisor at the time of his discharge, is excluded from any of the terms or provisions set out in the CBA because as a supervisor, he is expressly excluded under Article I, Section 1, and the CBA applies only to production and maintenance employees.

The Union disputes these contentions and argues that while the Company "may" have a right to discharge Mr. Verdorn under Article I, Section 1 when it is read alone, when read in conjunction with Article VIII, Section 7, and the CBA as a whole, which it must be, Mr. Verdorn retained just cause discharge protection for 18 months after his promotion.

11

This Court is persuaded that both parties cannot be correct as to their reading of the CBA. As previously set out in this Order, Article IX, Section 1, Step 3 clearly says, "In the event such dispute is with reference to the proper interpretation or application of this contract and upon the request of either party, such dispute <u>shall</u> be submitted to an arbitrator." (Emphasis added.) This language must be controlling.

**IT IS THEREFORE HEREBY ORDERED** that plaintiff's motion for summary judgment, Docket No. 9, is **granted** and defendant's motion for summary judgment, Docket No. 12 **denied**. In so ruling, this Court does not touch upon the merits of the Union's grievance. This Court limits its ruling to finding that the grievance at issue is subject to arbitration under the CBA.

**IT IS SO ORDERED** this 13th day of February, 2007.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa, is

12